UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOSE ANGEL RODRIGUEZ,

      Petitioner,                        Case NO. 2:06-CV-11795

v.                                      HONORABLE AVERN COHN

JAN TROMBLEY

      Respondent.

_____/

**MEMORANDUM AND ORDER**
**DENYING PETITION FOR WRIT OF HABEAS CORPUS**

**I. Introduction**

This is a habeas case under 28 U.S.C. § 2254. Petitioner Jose Angel Rodriguez (Petitioner) is a state inmate at the Kinross Correctional Facility in Kincheloe, Michigan, where he is serving a sentence of fifteen to forty years imprisonment for one count of first-degree criminal sexual conduct (CSC) and being a fourth felony habitual offender, Mich. Comp. Laws §§ 750.520b; 769.12, and a sentence of ten to twenty years imprisonment for one count of delivery of a controlled substance with intent to commit CSC and being a fourth felony habitual offender, Mich. Comp. Laws §§ 333.7401a; 769.12. Petitioner has filed a pro se petition for writ of habeas corpus claiming that he is incarcerated in violation of his constitutional rights. Respondent, through the Attorney General's Office, argues that Petitioner's claims are barred by the statute of limitations, procedurally defaulted, and/or lack merit. For the reasons which follow, the petition will be denied for lack of merit.

## II. Procedural History

Petitioner was convicted following a jury trial in the Ottawa County Circuit Court.

Petitioner filed an appeal of right to the Michigan Court of Appeals, presenting the seven claims that he raises in the instant petition.  The Michigan Court of Appeals affirmed petitioner's conviction and sentence.  People v. Rodriguez, No. 249413 (Mich.Ct.App. September 14, 2004).  Petitioner filed an application for leave to appeal in the Michigan Supreme Court in which he raised the same issues that he had raised in his appeal of right.  The Michigan Supreme Court denied petitioner leave to appeal. People v. Rodriguez, 473 Mich. 882 (2005).

Petitioner subsequently filed a petition for writ of habeas corpus.  The Respondent filed an answer, arguing that Petitioner's claims were meritless and/or unexhausted.  Respondent specifically argued that petitioner's first, third, and fourth claims were unexhausted because they were not presented to the Michigan appellate courts as federal constitutional claims, but solely as state law issues.  Petitioner subsequently moved to hold the petition in abeyance so that he could return to the state courts to exhaust these claims as federal constitutional issues.  The Court granted petitioner's motion and held the petition in abeyance pending petitioner's return to the state courts to federalize these claims.  Rodriguez v. Trombley, No. 2006 WL 3500838 (E.D. Mich. December 4, 2006).

Petitioner then filed a post-conviction motion for relief from judgment and a supplemental motion for relief from judgment pursuant to M.C.R. 6.500, *et. seq.,* in which he raised his first, third, and fourth claims as federal constitutional claims, as well as raising additional claims.  The trial court denied the motion for relief from judgment.

2

People v. Rodriguez, No. 02-26472-FC (Ottawa County Cir. Ct. Apr. 20, 2007).  The

Michigan appellate courts denied leave to appeal.  People v. Rodriguez, No. 279394

(Mich.Ct.App. April 4, 2008); lv. den. 482 Mich. 988 (2008).

On October 24, 2008, the Court granted petitioner's motion to lift the stay and

reactivated the petition to the Court's active docket.  Petitioner seeks habeas relief on

the following grounds:

I. The trial court reversibly erred in denying the defense motion for mistrial.

II. The defendant was unlawfully denied the effective assistance of trial counsel when trial counsel failed and/or refused to file and have heard a proper motion to suppress the statements the defendant allegedly made to the police.

III. The trial court reversibly erred in overruling the defense objections to the inaccurate information contained in the pre-sentence investigation report (PSIR).

IV. The trial court violated the U.S. and Michigan constitutions in sentencing the defendant to a prison term of 180-600 months on an habitual offender 4th supplement arising out of the CSC 1 and the delivery of a controlled substance or GBH with intent to commit CSC convictions.

V. Defendant was deprived of the state and federal constitutional right to have effective assistance of counsel.

VI. Defendant was deprived of his due process of law when the trial court's reasonable doubt jury instruction was too broad.

VII. Defendant was deprived of his liberty without due process of law by related instances of prosecutorial impropriety.

Although unclear, it appears that petitioner may also be raising three additional

claims as part of his renewed petition for writ of habeas corpus:

VIII.  The evidence was insufficient to convict him of the crimes charged.

IX. The examining magistrate erred in failing to appoint petitioner a Spanish language interpreter at the preliminary examination.

3

X.  Newly discovered evidence of perjury.

### III.  Facts

The material facts leading to petitioner's conviction are recited verbatim from the

Michigan Court of Appeals' opinion affirming his conviction, which are presumed correct

on habeas review pursuant to 28 U.S.C. § 2254(e)(1).  See Wagner v. Smith, 581 F.3d

410, 413 (6th Cir. 2009):

> On August 16, 2002, the sixteen-year-old victim went to a gathering at an apartment where she met defendant.  Defendant flirted with the victim and told everybody in the apartment that he was going to have sex with her. Defendant, Seth Outcalt, Josue Arevallo, Anthony Cruz, and David Vega made drinks in the kitchen and somebody put GHB (Gamma-Hydroxybutyrate)[1] in the drinks.  The testimony conflicts regarding who actually put the GHB in the drinks, but there is no dispute that the GHB belonged to Outcalt.[2]  Either defendant or Outcalt made a drink for the victim, and either defendant or Vega brought the drink to the victim.  At one point, Jose Sanchez took a sip out of the victim's drink, but defendant told him not to drink out of it, because he had put something into the drink "that gets girls horny and causes them to pass out."
>
> After the victim finished the drink given to her by one of the men, she got up to go to the bathroom, but her legs gave out and she could not walk. Defendant helped her to the bathroom and she remembered being slapped in the face by defendant, but did not remember anything after that point. Defendant then handed out condoms and kept one for himself and announced that he was going to "hit it."  Defendant took the victim to the bedroom and closed the door.  Witnesses noticed that the victim was stumbling.  A short time later, somebody opened the bedroom door, and witnesses saw defendant having sex with the victim while she was

---

[1]  GHB is a sedative with effects similar to alcohol. In low doses, it makes people more outgoing and uninhibited. In high doses, it makes people very sleepy and can put them into a coma. (Footnote original).

[2]  Outcalt was charged with delivering GHB with intent to commit CSC, but he testified against defendant in order to get this charge reduced. Outcalt ultimately pleaded guilty to delivery of GHB to a minor and was sentenced to probation. (Footnote original).

unconscious. Cruz, on the other hand, testified that defendant walked out of the room after helping the victim to bed, and never had sex with the victim. Defendant also denied giving the victim a drink with GHB or having sex with the victim. After defendant came out of the bedroom, he told Arevallo that he had had sex with the victim and gave Arevallo a condom. Arevallo then went into the bedroom for about ten minutes. During that time, somebody opened the door, and Sanchez saw Arevallo under the blankets with the victim and it looked like they were having sex. Arevallo testified that he did not have sex with the victim because he could not get an erection, but just "touched her breasts and stuff." [3] When Arevallo came out, defendant went into the bedroom again for a time. After defendant came out, Vega went into the bedroom and put on a condom that defendant had given him. Although the condom broke, Vega began to have sex with the victim. [4] Arevallo and one other man were in the room with Vega and the victim. Meanwhile, Outcalt was watching the bedroom proceedings through the window from outside when a plainclothes police officer approached him. Outcalt ran inside and told everyone to leave. He then went into the bedroom and pulled Vega off of the victim. According to Shelly Navarro, however, Vega was still having sex with the victim when she entered the room, and he only stopped when she began screaming for the men to get out. Once the men left, Navarro inspected the victim and saw that she was unconscious and had semen on her face, in her hair, on her back, and on her buttocks. When Navarro tried to put the victim's pants on, "semen was just gushing out of her vagina." Navarro testified that she later decided to call the police, but Outcalt pushed her against the wall and told her not to call anybody.

At about noon the next day, the victim woke up and saw a condom wrapper and broken condoms on the floor. When she went to the bathroom, she noticed that she was not wearing any underwear and that pieces of broken condom came out of her. She was also wearing a different shirt than she had been wearing when she went to the apartment. Because she believed that she had been raped, she went to a facility to be examined. A forensic scientist found evidence of sperm cells on the victim during the examination,

---

[3] Arevallo was charged with first-degree CSC for this incident, but he testified against defendant in order to get the charge lowered to second-degree CSC. (Footnote original).

[4] Vega was charged with first-degree CSC for this incident, but he testified against defendant in order to get the charge lowered to second-degree CSC. Vega ultimately pleaded guilty to second-degree CSC and was sentenced to two to fifteen years' imprisonment. (Footnote original).

but defendant was later eliminated as being the source of the sperm.  A urine sample revealed the presence of marijuana and an unnatural amount of GHB in the victim's system.

People v. Rodriguez, No. 249413, * 1-2 (Mich.Ct.App. September 14, 2004).

## IV.  Analysis

### A.  Standard of Review

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d); Harpster v. State of Ohio, 128 F. 3d 322, 326 (6th Cir. 1997).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.  An "unreasonable application" occurs when the state court identifies the correct legal principle from a Supreme Court's decision but unreasonably applies that principle to the facts of the prisoner's case.

Williams v. Taylor, 529 U.S. 362, 412-13 (2000).  A federal habeas court may not find a state adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Id. at 411.

### B.  The statute of limitations

Respondent initially contends that the petition should be dismissed because Petitioner failed to return to the state courts to initiate post-conviction proceedings within sixty days of this Court's order to hold the petition in abeyance, as the Court had directed in its order.  Petitioner, however, sent a letter to this Court on or about April 13, 2007, in which he informed the Court that he had sent a post-conviction motion and brief to the Ottawa County Circuit Court via Legal Expedited Mail within the sixty day time period but that the motion somehow was misplaced.  Petitioner has attached to his letter documentation which purports to show that he sent this motion via legal expedited mail within the required time frame.

Although the issue of whether a claim is procedurally barred should ordinarily be resolved first, "judicial economy sometimes dictates reaching the merits [of a claim or claims] if the merits are easily resolvable against a petitioner while the procedural bar issues are complicated."  Barrett v. Acevedo, 169 F. 3d 1155, 1162 (8th Cir. 1999)(internal citations omitted).  Because the statute of limitations does not constitute a jurisdictional bar to habeas review, a federal court, can, in the interest of judicial economy, proceed to the merits of a habeas petition.  See Smith v. State of Ohio Dept. of Rehabilitation, 463 F. 3d 426, 429, n. 2 (6th Cir. 2006).

Here, as explained below, assuming without deciding that the current petition was re-filed in a timely manner, Petitioner's habeas application fails on the merits.

### C.  Procedural Default

Respondent contends that some or all of petitioner's are procedurally defaulted,

7

because he raised them for the first time in his post-conviction motion and the Michigan appellate courts denied petitioner leave to appeal pursuant to M.C.R. 6.508(D).

Federal habeas relief may be precluded on claims that a petitioner has not presented to the state courts in accordance with the state's procedural rules. See Wainwright v. Sykes, 433 U.S. 72, 85-87 (1977). A petitioner's procedural default in the state courts will preclude federal habeas review if the last state court rendering a judgment in the case rested its judgment on the procedural default. Id. at 85. In such a case, a federal court must determine not only whether a petitioner has failed to comply with state procedures, but also whether the state court relied on the procedural default or, alternatively, chose to waive the procedural bar.

Michigan Court Rule 6.508(D)(3) provides that a court may not grant relief to a defendant if the motion for relief from judgment alleges grounds for relief which could have been raised on direct appeal, absent a showing of good cause for the failure to raise such grounds previously and actual prejudice resulting therefrom.

Here, the trial court denied petitioner relief on the first seven of his post-conviction claims on the grounds that they had previously been raised on direct appeal, either by Petitioner's appellate counsel or by Petitioner in his supplemental pro per brief.

M.C.R. 6.508(D)(2) indicates that a court in Michigan should not grant post-conviction relief if the post-conviction motion "alleges grounds for relief which were decided against the defendant in a prior appeal or proceeding under this subchapter, unless the defendant establishes that a retroactive change in the law has undermined the prior decision[;]"  6.508(D)(2) is a rule of res judicata which bars a defendant from

8

re-litigating claims in a post-conviction motion which have already been adversely decided against him or her.  Because it appears that the state court relied on 6.508(D)(2) in rejecting petitioner's first seven claims, Petitioner's claims are not procedurally defaulted.  See Hicks v. Straub, 377 F. 3d 538, 558, n. 17 (6th Cir. 2004).

The trial court rejected petitioner's interpreter and perjury claims on the ground that they lacked merit, without invoking the provisions of 6.508(D)(3).  A claim is not procedurally defaulted where the Michigan Supreme Court relies upon Rule 6.508(D) without a clear and express invocation of a procedural bar and where the only state court to provide a reasoned opinion adjudicated the petitioner's claim on the merits. See Abela v. Martin, 380 F. 3d 915, 921-24 (6th Cir. 2004).  Although the Michigan Court of Appeals and the Michigan Supreme Court rejected petitioner's post-conviction appeal on the basis of Michigan Court Rule 6.508(D), the trial court determined that Petitioner's interpreter and perjury claims had no merit.  The trial court made no mention of Rule 6.508(D)(3) when denying petitioner's motion for relief from judgment. This Court therefore concludes that these two claims are not defaulted.

Because Petitioner's claims are not procedurally defaulted, the Court will examine them on the merits.

### D.  Claim I. - Motion for a Mistrial

Petitioner first claims that the trial court abused its discretion by denying his motion for a mistrial, which trial counsel made after Navarro mentioned during direct examination that she knew that Petitioner was an ex-felon.  After Navarro made this comment, the prosecutor immediately cautioned her by saying, "[D]on't go there."  No further mention of petitioner's status as an ex-felon was made during trial or closing

9

arguments by the prosecutor or any witnesses.  Defense counsel declined the trial court's offer to instruct the jury to disregard Navarro's comment.

The Michigan Court of Appeals rejected petitioner's claim on the grounds that "'an unresponsive, volunteered answer to a proper question is not grounds for granting a mistrial.'"  Rodriguez, Slip. Op. at * 3 (quoting People v. Griffin, 235 Mich. App 27, 36; 597 NW2d 176 (1999), quoting People v. Haywood, 209 Mich.App 217, 228; 530 NW2d 497 (1995)).

A trial court has the discretion to grant or deny a motion for mistrial in the absence of a showing of manifest necessity.  Walls v. Konteh, 490 F. 3d 432, 436 (6th Cir. 2007).  Here, Navarro's comment about Petitioner's prior criminal record did not render the trial fundamentally unfair.  The remark was unsolicited, made in response to a proper line of questioning by the prosecutor, and there was no evidence of the prosecution's bad faith.  As such, the failure to declare a mistrial did not deprive petitioner of a fair trial, particularly when this remark was a small part of the evidence against Petitioner.  The Michigan court's similar conclusion was not unreasonable. Petitioner is therefore not entitled to relief on this claim.

### E.  Claims II. and V. - Ineffective Assistance of Counsel

In his second and fifth claims, Petitioner raises a number of allegations of ineffective assistance of counsel.

To prevail on his ineffective assistance of counsel claim, petitioner must show that the state court's conclusion regarding his claim was contrary to, or an unreasonable application of, Strickland v. Washington, 466 U.S. 668 (1984).  Strickland established a two-prong test for claims of ineffective assistance of counsel: the

petitioner must show (1) that counsel's performance was deficient, and (2) that the deficient performance prejudiced the defense. Strickland, 466 U.S. at 687. The Strickland standard applies as well to claims of ineffective assistance of appellate counsel. See Whiting v. Burt, 395 F. 3d 602, 617 (6th Cir. 2005).

Petitioner initially contends that his trial counsel was ineffective for failing to move for the suppression of the statement that he made to Detective Bowman, because he had not been advised of his Miranda warnings prior to making the statement.

In rejecting this claim, the Michigan Court of Appeals noted that defense counsel objected to the admission of Petitioner's statement to Detective Bowman at trial on the ground that the police did not read petitioner his Miranda rights before he made the statements, but the trial court overruled counsel's objection. Because there was no indication that the trial court's ruling would have been different if defense counsel had objected to the admission of the statements before trial rather than at trial, petitioner was unable to show that prejudice. Rodriguez, Slip. Op. at * 4. In addition, the Michigan Court of Appeals observed that the officer testified that Petitioner contacted him, indicated that he wished to speak to the police, and voluntarily came to the police station for an interview. The officer explained to Petitioner that he was not in custody and was free to leave. The officer also informed Petitioner that because he was not in custody, the officer was not required to give him Miranda warnings. Accordingly, the Michigan Court of Appeals found that trial counsel was not ineffective. The Court agrees.

A prosecutor may not use a defendant's statements which stem from custodial

11

interrogation unless the prosecutor can demonstrate the use of procedural safeguards which are effective to secure a defendant's privilege against self-incrimination. Miranda v. Arizona, 384 U.S. 436, 444 (1966).

Police officers, however, are not required to administer Miranda warnings to every person whom they question nor are they required to administer Miranda warnings simply because the questioning takes place in a police station or because the questioned person is one whom the police suspect.  Oregon v. Mathiason, 429 U.S. 492, 495 (1977).  Instead, Miranda warnings are required "only where there has been such a restriction on a person's freedom as to render him 'in custody.'"  "Custody," for purposes of Miranda, requires a "significant deprivation of freedom."  See Mason v. Mitchell, 320 F. 3d 604, 632 (6th Cir. 2003).  Two discrete inquiries are essential to determining whether a criminal suspect was in custody at time of interrogation, and therefore entitled to *Miranda* warnings: first, what were the circumstances surrounding the interrogation, and second, given those circumstances, would a reasonable person have felt that he or she was not at liberty to terminate the interrogation and leave*. See* Thompson v. Keohane, 516 U.S. 99, 112 (1995).  The initial determination of whether a suspect is in custody, for purposes of Miranda, depends on the objective circumstances of the interrogation, not on the subjective views harbored by the interrogating officer. See Stansbury v. California, 511 U.S. 318, 323 (1994).

Here, Detective Bowman testified that Petitioner was not in custody when he made his statement to the police, but that he came into the station voluntarily, where petitioner was told that he was free to leave at any time. (Tr. 3/26/2003, pp. 181-83). Because Petitioner was not in custody when he made his statements to Detective

12

Bowman, he cannot establish that the statement should have been suppressed. Therefore, Petitioner cannot demonstrate that he was prejudiced by counsel's failure to move for suppression of his statement.  Because there was no reasonable probability that a motion to suppress based on an alleged <u>Miranda</u> violation would have succeeded in this case, Petitioner was not denied effective assistance by trial counsel's failure to move for the suppression of his statement on this basis.

Petitioner next contends that trial counsel was ineffective for failing to conduct criminal record checks on Sean Outcalt and Josue Arevallo for impeachment purposes at trial.  The Michigan Court of Appeals rejected this claim because Petitioner failed to present any evidence that Outcalt or Arevallo had prior criminal records or that if they did, their previous convictions were of such a nature that evidence of them would have been admissible for impeachment purposes under M.R.E. 609.  <u>Rodriguez</u>, Slip. Op. at * 4-5.

Petitioner has failed to offer the state courts or this Court any evidence to establish that Outcalt or Arevallo had prior criminal convictions that would be admissible for impeachment purposes under M.R.E. 609.  Conclusory allegations of ineffective assistance of counsel, without any evidentiary support, do not provide a basis for habeas relief.  <u>See</u> <u>Workman v. Bell</u>, 178 F.3d 759, 771 (6th Cir. 1998). Because there is no evidence that either man had prior convictions that could be used to impeach their credibility, Petitioner has failed to establish that counsel was ineffective on this ground.

Moreover, a review of the trial transcript shows that trial counsel impeached Outcalt and Arevallo extensively about other issues, including the fact that both men

13

were testifying against Petitioner in exchange for a reduction of the charges against them.  In addition, trial counsel elicited testimony from Outcalt that most of the first statement that he made to the police was false.  Trial counsel also elicited testimony from Outcalt that he had previously obtained GHB because he was a body builder and had supplied this drug to other persons.  Arevallo admitted that he had read the other witnesses' written statements prior to testifying.  Arevallo also admitted that he was intoxicated at the time of the incident. (Tr. 3/26/2003, pp. 62-99, 117-28).  Any failure by trial counsel to impeach either man with any prior felony convictions that they might of had was not prejudicial, in light of the fact that counsel impeached both witnesses with other damaging evidence.

Petitioner next contends that counsel was ineffective for failing to raise a diminished capacity defense.  In 1994, the Michigan legislature enacted Mich. Comp. Laws § 768.21a, which set forth the legal standards for an insanity defense in Michigan.  The Michigan Supreme Court has subsequently held that this statute abolished the diminished capacity defense in Michigan, and that the insanity defense, as established by the Michigan Legislature in § 768.21a, was the sole standard for determining criminal responsibility as it relates to mental illness or retardation.  See People v. Carpenter, 627 N.W. 2d 276, 283-85 (Mich. 2001); see also Wallace v. Smith, 58 Fed. Appx. 89, 94, n. 6. (6th Cir. 2003).  Because Michigan no longer recognizes a diminished capacity defense, Petitioner is unable to show that trial counsel was ineffective in failing to pursue such a defense.

Petitioner further argues that trial counsel was ineffective for failing to raise an intoxication defense.  Federal courts have rejected ineffective assistance of counsel

14

claims for failure to raise an intoxication defense on the ground that the level of intoxication needed to negate specific intent is so high that the defense is rarely successful.  See Evans v. Meyer, 742 F. 2d 371, 374 (7th Cir. 1984); Vinson v. McLemore, 226 Fed. Appx. 582, 585 (6th Cir. 2007). More importantly, as the Michigan Court of Appeals explained, the defense theory advanced at trial was that Petitioner neither engaged in sexual intercourse with the victim nor knowingly or intentionally provided her with the GHB.  Thus, an intoxication defense presumably would have required Petitioner to admit to being involved in giving GHB to the victim and sexually assaulting her, an admission that likely would have been detrimental to his defense. Accordingly, petitioner has not shown that trial counsel was ineffective for failing to advance an intoxication defense.

Petitioner next argues that trial counsel was ineffective for failing to move to have the move to have the inconsistent testimony of several prosecution witnesses stricken from the record.  Alternatively, Petitioner argues that trial counsel should have attacked the witnesses' credibility by pointing out their inconsistent statements.

As the Michigan Court of Appeals noted in its opinion, Rodriguez, Slip. Op. at * 5, petitioner has cited no authority that inconsistent testimony must be stricken from the record.  Federal case law, in fact, indicates that a federal district court does not err in failing to strike a witness' entire testimony because of inconsistent statements, because the issue of a witness' credibility is for the jury to decide.  See U.S. v. Snider, 720 F. 2d 985, 993 (8th Cir. 1983).  Trial counsel was therefore not ineffective for failing to move to strike the testimony of the witnesses on this basis.

Given this determination, Petitioner's related claim that trial counsel failed to

15

attack the credibility of the witnesses by pointing out the inconsistencies in their testimony also fails.  "Courts generally entrust cross-examination techniques, like other matters of trial strategy, to the professional discretion of counsel."  Dell v. Straub, 194 F. Supp. 2d 629, 651 (E.D. Mich. 2002).  "Impeachment strategy is a matter of trial tactics, and tactical decisions are not ineffective assistance of counsel simply because in retrospect better tactics may have been available."  Id.

Moreover, a review of the trial transcript establishes that trial counsel made an opening statement (Tr. 3/25/2003, pp. 89-95), extensively cross-examined the witnesses (Tr. 3/25/2003, pp. 113-138, 163-88, 190-92, 214-27, 235-44, 246-47; Tr. 3/26/2003, pp. 11-13, 29-38, 62-99, 101-03, 117-28, 139-42, 171-76, 193-97), and made an extensive closing argument. (Tr. 3/26/2003, pp. 210-227).  In both his cross-examination and in his opening and closing arguments, trial counsel attacked the credibility of the witnesses by impeaching several witnesses with their prior inconsistent testimony from the preliminary examination, by pointing out that the witnesses had made statements to the police that were inconsistent with their trial testimony, with the fact that several witnesses had been intoxicated, that several witnesses had received plea bargains to testify against Petitioner, and that several witnesses had problems remembering details from the night of the incident.  Trial counsel also elicited testimony from the police that petitioner's DNA was never recovered from the victim and that Petitioner had denied giving the victim GHB or sexually assaulting her.  In light of the record, trial counsel's performance did not constitute ineffective assistance of counsel where the record shows that defense counsel carefully cross-examined the prosecution witnesses and in his opening and closing arguments emphasized the inconsistencies

16

and weaknesses in the testimony of the various witnesses, as well as their possible motivations for fabricating these charges against Petitioner.

Petitioner lastly contends that appellate counsel was ineffective for failing to raise in his appellate brief several claims that petitioner raised in his own pro per supplemental Rule 11 brief.  As the Michigan Court of Appeals indicated, Petitioner is unable to show any prejudice because Petitioner raised these claims in his own supplemental Rule 11 brief.  Rodriguez, Slip. Op. at * 5.  As such, he is not entitled to relief on this ground.

Overall, Petitioner has failed to show that his trial or appellate counsel's performances were deficient or that any deficiencies in the performance prejudiced his defense.  Therefore, the state courts' denial of relief did not result in decisions that were contrary to Strickland.

### F.  Claims III. and IV. -Sentencing claims

In his third and fourth claims, Petitioner brings a number of challenges to his sentence.  Each will be examined in turn.

In his third claim, Petitioner says  that the trial court erred by relying on the prior convictions listed in petitioner's pre-sentence investigation report (PSIR) in imposing his sentence. According to the PSIR, petitioner had been convicted of six felony offenses before being convicted of the two current offenses.  Petitioner claims that he could not have been convicted of four of those offenses because he was in the United States Navy when the offenses were committed.  Petitioner's naval service was mentioned in the PSIR.

In rejecting this claim, the Michigan Court of Appeals noted that although

17

Petitioner contested the accuracy of the prior convictions listed in his PSIR by stating that he could not have committed four of the crimes listed because he was in the United States Navy from 1987 to 1991, Petitioner failed to present to the trial court either a copy of his service records or a copy of his discharge papers to show that he actually was in the Navy and was honorably discharged.  In response to Petitioner's challenge, the prosecution informed the trial court that the prior convictions listed in petitioner's PSIR were taken directly from the federal probation department, which contained no record of defendant ever being enlisted in the Navy.  At the time of sentencing in this case, Petitioner was on probation for a federal conviction for conspiracy to distribute heroin.  Rodriguez, Slip. Op. at * 9 and n. 9.

A criminal defendant possesses a constitutional right not to be sentenced on the basis of "misinformation of constitutional magnitude."  Roberts v. United States, 445 U.S. 552, 556 (1980).  In order to prevail on a claim that a trial court relied on inaccurate information at sentencing, a habeas petitioner must demonstrate that the sentencing court relied upon this information and that it was materially false.  Collins v. Buchkoe, 493 F. 2d 343, 345-346 (6th Cir. 1974).  Where a petitioner fails to demonstrate in his or her petition that the sentencing court relied upon materially false information in imposing sentence, this claim is without merit.  Thomas v. Foltz, 654 F. Supp. 105, 108 (E.D. Mich. 1987).

Here, Petitioner has failed to present any evidence to the state courts or to this Court to establish that he was in the Navy when these prior convictions occurred, nor has he presented any other evidence to establish that he was never convicted of these prior offenses.  Because Petitioner has failed to show that the factors considered by

18

trial court at sentencing were materially false or improperly considered, he is not entitled to habeas relief on his claim.

In his fourth claim, Petitioner contends that his sentences violate the U.S. and Michigan constitutions. Petitioner's sentences of fifteen to forty years imprisonment for first-degree criminal sexual conduct and being a fourth felony habitual offender and ten to twenty years imprisonment for delivery of a controlled substance with intent to commit CSC and being a fourth felony habitual offender were within the statutory limits for these offenses under Michigan law. A sentence imposed within the statutory limits is not generally subject to habeas review. Cook v. Stegall, 56 F. Supp. 2d 788, 797 (E.D. Mich. 1999). A sentence within the statutory maximum set by statute does not normally constitute cruel and unusual punishment. Austin v. Jackson, 213 F. 3d 298, 302 (6th Cir. 2000).

To the extent that Petitioner argues that his sentence is disproportionate under state law, he fails to state a claim for federal habeas relief. See Austin, 213 F. 3d at 300. There is also no federal constitutional right to individualized sentencing. See United States v. Thomas, 49 F. 3d 253, 261 (6th Cir. 1995).

Petitioner also is not entitled to relief on any claim that his sentence constitutes cruel and unusual punishment under the Eighth Amendment. The United States Constitution does not require strict proportionality between a crime and its punishment. See Harmelin v. Michigan, 501 U.S. 957, 965 (1991). A sentence that falls within the maximum penalty authorized by statute "generally does not constitute 'cruel and unusual punishment.'" Austin, 213 F.3d at 302 (internal quotation omitted). "Federal courts will not engage in a proportionality analysis except in cases where the penalty

19

imposed is death or life in prison without possibility of parole." Thomas, 49 F. 3d at 261.

Petitioner's sentence of fifteen to forty years imprisonment on his conviction for first-degree criminal sexual conduct and being a fourth felony habitual offender and his sentence of ten to twenty years in prison delivery of a controlled substance with intent to commit CSC and being a fourth felony habitual offender were within the statutory maximum of life imprisonment for these offenses. Thus, the state court acted within its discretion in imposing petitioner's sentence and there is no extreme disparity between petitioner's crime and sentence so as to offend the Eighth Amendment.

To the extent that Petitioner claims that the state trial court incorrectly scored or calculated his sentencing guidelines range under the Michigan Sentencing Guidelines is not a cognizable claim for federal habeas review, because it is basically a state law claim. See Howard v. White, 76 Fed. Appx. 52, 53 (6th Cir. 2003). Petitioner had no state-created interest in having the Michigan Sentencing Guidelines applied rigidly in determining his sentence.

Petitioner, however, also contends that the trial court judge violated his Sixth Amendment right to a trial by jury by using factors to his sentencing guidelines which had not been submitted to a jury and proven beyond a reasonable doubt or admitted to by petitioner. In support of his claim, Petitioner relies on Blakely v. Washington, 542 U.S. 296 (2004), where the Supreme Court held that other than the fact of a defendant's prior conviction, any fact that increases or enhances a penalty for the crime beyond the prescribed statutory maximum for the offense must be submitted to the jury and proven beyond a reasonable doubt. Id. at 301.

20

The problem with Petitioner's reliance on <u>Blakely</u> is that the case in <u>Blakely</u> involved a trial court's departure from Washington's determinate sentencing scheme. Michigan, by contrast, has an indeterminate sentencing system in which the defendant is given a sentence with a minimum and a maximum sentence. The maximum sentence is not determined by the trial judge but is set by law. <u>See</u> <u>People v. Drohan</u>, 475 Mich. 140, 160-61 (2006); <u>People v. Claypool</u>, 470 Mich. 715, 730, n. 14 (2004) (both citing Mich. Comp. Laws Ann. 769.8). "[M]ichigan's sentencing guidelines, unlike the Washington guidelines at issue in <u>Blakely</u>, create a range within which the trial court must set the minimum sentence." <u>Drohan</u>, 475 Mich. at 161. Under Michigan law, only the minimum sentence must presumptively be set within the appropriate sentencing guidelines range and the trial judge sets the minimum sentence, but can never exceed the maximum sentence. <u>Claypool</u>, 470 Mich. at 730, n. 14. Michigan's indeterminate sentencing scheme is therefore unaffected by the Supreme Court's holding in <u>Blakely</u>. As such, the trial court's calculation of petitioner's sentencing guidelines range did not violate petitioner's Sixth Amendment rights. Petitioner is therefore not entitled to habeas relief on his third and fourth claims.

### G.  The Reasonable Doubt Instruction

Petitioner next claims that the trial court did not adequately instruct the jury on reasonable doubt. In rejecting this claim, the Michigan Court of Appeals noted that the record established that the trial court's instruction concerning reasonable doubt was an almost verbatim reading of CJI2d 3.2, which "has repeatedly been held to adequately convey the concepts of reasonable doubt, the presumption of innocence, and the burden of proof." <u>Rodriguez</u>, Slip. Op. at * 5-6 (internal citations omitted).

21

Petitioner is not entitled to relief on this claim.  The trial court gave the jury Michigan's standard reasonable doubt instruction which has been held constitutional. See Binder v. Stegall, 198 F. 3d 177, 178-79 (6th Cir. 1999).

### H.  Claim VII. - Prosecutorial Misconduct

Petitioner next contends that he was deprived of a fair trial because of prosecutorial misconduct.

Petitioner first claims that the prosecutor failed to disclose evidence that the victim had contracted a sexually transmitted disease from the sexual assaults that petitioner was accused of participating in.  Petitioner claims that this evidence would have been exculpatory because he did not have, and never has had, a sexually transmitted disease.

The Michigan Court of Appeals rejected this claim by pointing out that there was no evidence in the record which proved that Petitioner did not have a sexually transmitted disease.  The Michigan Court of Appeals also noted that Petitioner was not the only person to have sexually assaulted the victim, since Arevallo and Vega also had sex with the victim.  The victim could have contracted the disease from either of these two men.  The Michigan Court of Appeals concluded that evidence that the victim had contracted a sexually transmitted disease would not prove that petitioner did not have sex with the victim.  Rodriguez, Slip. Op. at * 6-7.

Petitioner further claims that the prosecution violated the rules of discovery by failing to require Arevallo and Vega to submit DNA samples to be tested for comparison with an unidentified sperm sample that was found with a rape kit during the victim's medical examination.  The Michigan Court of Appeals rejected this claim,

22

finding that such evidence would not have been exculpatory and would have been immaterial, because there was already evidence at trial that Arevallo and Vega, along with petitioner, had sex with the victim.  Rodriguez, Slip. Op. at * 7.

To prevail on these related claims of misconduct, Petitioner must show (1) that the state withheld exculpatory evidence and (2) that the evidence was material either to guilt or to  punishment irrespective of good faith or bad faith of the prosecution.  Brady v. Maryland, 373 U.S. 83, 87 (1963).  Evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.  A "reasonable probability is a probability sufficient to undermine confidence in the outcome."  United States v. Bagley, 473 U.S. 667, 683 (1985).  The burden is on Petitioner to prove that evidence that is required to be disclosed to him under Brady was not disclosed to him.  Coe v. Bell, 161 F. 3d 320, 344 (6th Cir. 1998).

Here, Petitioner has failed to show that evidence that the victim obtained a sexually transmitted disease as a result of the sexual assaults would have exculpated him of the crime.  Petitioner was the first person to have sex with the victim.  As the Michigan Court of Appeals noted, one of the men who had sex with the victim afterward could have transmitted the sexually transmitted disease to her.  In addition, petitioner has failed to provide any credible evidence to establish that he was not suffering from a sexually transmitted disease at the time of the assault.

Petitioner likewise is unable to show that the failure to have Arevello and Vega submit DNA samples to be compared to the unidentified sperm sample taken from the victim would have exculpated him, in light of the fact that there was already testimony

23

that Arevello and Vega had sex with the victim.

Petitioner has failed to show that any of this evidence exculpated him of this crime. Petitioner is therefore not entitled to habeas relief on his claim.

Petitioner next contends that the prosecutor committed misconduct by asking leading questions of his witnesses.

To prevail on a claim of prosecutorial misconduct, Petitioner must show that the alleged misconduct infected his trial with such unfairness as to make the resulting conviction a denial of due process. Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974). Courts must keep in mind that "the touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor." Smith v. Phillips, 455 U.S. 209, 219 (1982). In addition, because this case is a habeas case and is not a direct appeal, the inquiry into an issue of prosecutorial misconduct is less stringent. See Spalla v. Foltz, 615 F. Supp. 224, 227 (E.D. Mich. 1985).

In rejecting this claim, the Michgan Court of Appeals found that Petitioner failed to cite to any instances in the record where the prosecutor improperly led the witnesses. Rodriguez, Slip. Op. at * 7. Conclusory allegations of prosecutorial misconduct fail to state a claim upon which habeas relief can be granted. In any event, Petitioner's claim that the prosecutor was allowed to ask the witnesses leading questions relates to a state rule of evidence, and federal habeas review of state court evidentiary rulings is extremely limited. Because Petitioner's claim is conclusory, he has failed to show that the prosecutor's questions were improper or that he is entitled to habeas relief on this basis.

24

Petitioner next contends that the prosecutor injected facts that had not been introduced into evidence by arguing that Petitioner passed out condoms and kept one for himself.  It is improper for a prosecutor during closing arguments to bring to the jury any purported facts which have not been introduced into evidence and which are prejudicial.  Byrd v. Collins, 209 F. 3d at 535 (internal citations omitted).  However, prosecutors must be given leeway to argue reasonable inferences from the evidence. Id.  Here, there was some testimony that Petitioner passed out condoms to the other participants and used one himself.  The prosecutor's comments were therefore not improper.

Respondent has also addressed several other prosecutorial misconduct allegations that were not made by Petitioner in his initial petition, but were apparently raised in his motion for relief from judgment.  The petition for writ of habeas corpus, and not briefs or other documents, provides the basis for granting a writ of habeas corpus.  Although these additional prosecutorial misconduct claims were raised by petitioner before the Michigan courts, he has not included them in his petition.  A federal district court is not required to review an issue merely because it was raised before the state appellate court, where the habeas petitioner fails to list it as a ground for habeas relief or to argue the issue in any supporting memorandum that is attached to the habeas petition.  Nonetheless, because respondent has chosen to respond to these allegations in her supplemental answer, the Court will briefly address them.

Petitioner claimed in his post-conviction motion that the prosecutor made several comments in closing argument that amounted to improper vouching.

A prosecutor may not express a personal opinion concerning the guilt of a

25

defendant or the credibility of trial witnesses, because such personal assurances of guilt or vouching for the veracity of witnesses by the prosecutor "exceeds the legitimate advocates' role by improperly inviting the jurors to convict the defendant on a basis other than a neutral independent assessment of the record proof." Caldwell v. Russell, 181 F.3d 731, 737 (6th Cir. 1999)(internal citations omitted). However, a prosecutor is free to argue that the jury should arrive at a particular conclusion based upon the record evidence, including the conclusion that the evidence proves the defendant's guilt. Id. The test for improper vouching for a witness is whether the jury could reasonably believe that the prosecutor was indicating a personal belief in the witness' credibility. United States v. Causey, 834 F. 2d 1277, 1283 (6th Cir. 1987). The prosecutor's remarks did not amount to improper vouching because they were made in reference to the evidence that was presented in court or were based on reasonable inferences of the evidence that was presented in court. Petitioner is not entitled to relief on this claim. Petitioner's related ineffective assistance of counsel claim regarding trial counsel's failure to object to the prosecutor's remarks must also fail.

## I. Claim VIII. - Sufficiency of the Evidence

Petitioner also raised a sufficiency of evidence claim in his post-conviction motion. Petitioner did not raise this claim in his petition, but because respondent has responded to the claim in her supplemental answer, the Court will briefly address it.

A habeas court reviews claims that the evidence at trial was insufficient for a conviction by asking whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Scott v. Mitchell, 209 F. 3d 854, 885 (6th Cir.

26

2000)(citing to <u>Jackson v. Virginia</u>, 443 U.S. 307, 319 (1979)).  On a state prisoner's habeas petition challenging the insufficiency of the evidence, a federal district court must draw all available inferences and resolve all credibility issues in favor of the jury's verdict.

Here, Petitioner claims that the evidence was insufficient because the witnesses were not credible.  Attacks on witness credibility are simply challenges to the quality of the prosecution's evidence, and not to the sufficiency of the evidence.  An assessment of the credibility of witnesses is therefore generally beyond the scope of federal habeas review of sufficiency of evidence claims.  Petitioner's insufficiency of evidence claim rests on an allegation of the witnesses' credibility, which is the province of the jury. Petitioner is therefore not entitled to habeas relief on this claim.

To the extent that petitioner contends that the verdict went against the great weight of the evidence, he would not be entitled to relief on this claim.  A federal habeas court has no power to grant habeas relief on the ground that a state conviction is against the great weight of the evidence.  <u>Cukaj v. Warren</u>, 305 F. Supp. 2d 789, 796 (E.D. Mich. 2004).

### J.  <u>Claim IX. - The Interpreter</u>

Petitioner also alleged in his post-conviction motion that his due process rights were violated where he was not provided with a Spanish language interpreter at the preliminary examination.  In rejecting this claim, the trial court noted that Petitioner never raised this claim about the absence of an interpreter at the preliminary examination, either at the preliminary examination or any time in the trial court.

A state court's rulings concerning the appointment of an interpreter do not rise to

27

constitutional dimension where the habeas petitioner understood the proceedings. See Ruiz v. McKenzie, 63 F. Supp. 2d 1290, 1291 (D. Kan. 1999).  Under Michigan law, whenever it appears to the court that a defendant is incapable of understanding the nature of, or of defending himself in, the proceedings against him because he is unable to understand the English language, an interpreter should be appointed in his behalf. However, a trial judge is under no duty to affirmatively establish a defendant's proficiency in the English language when no evidence is presented to him that could put the issue in doubt.  People v. Atsilis, 60 Mich. App. 738, 739; 231 N.W.2d 534 (1975).  Under federal law, a judge's duty to provide an interpreter for a defendant arises only the judge determines "that the defendant primarily speaks a language other than English such that his comprehension of the proceedings or communication with counsel or the court is inhibited."  U.S. v. Rodriguez, 211 Fed. Appx. 467, 471 (6th Cir. 2006)(citing 28 U.S.C. § 1827(d)(1)).

Petitioner has failed to support his claim that he did not understand the preliminary proceedings or that this rights to present a defense and assist his attorney were violated.  The pre-sentence investigation report (PSIR) indicates that Petitioner completed high school.  The PSIR also indicates that Petitioner came to the United States in 1985, some seventeen years before petitioner's preliminary examination.  A review of the defendant's description of the offense in the PSIR indicates that Petitioner was able to communicate in English, as there was no reference to Petitioner having difficulty with the English language.

Furthermore, there is no indication that Petitioner registered any objection at the preliminary examination or requested the assistance of an interpreter at that time.

Petitioner did have an interpreter at the trial (See Tr. 3/26/2003, p. 249) and at

sentencing, (Tr. 4/28/2003, p. 2), although it is unclear whether the interpreter was

appointed or retained by petitioner, or when the services of this interpreter were

obtained.  However, a review of the trial and sentence transcripts shows that Petitioner

was able to respond to the Court's questions, ask questions, and advocate on his

behalf without the assistance of the translator. (Tr. 3/26/03, p 254; Tr. 4/28/03, pp 9-14,

17-18).  Petitioner is not entitled to habeas relief on this claim.

### K.  Claim X. - Perjury

Petitioner's final claim is that he was denied a fair trial by the purportedly

manipulated and false testimony of prosecutor witness Seth Outcalt.  Again, Petitioner

did not raise this claim in his petition, although he attached to his petition for writ of

habeas corpus two motions for reconsideration that were filed by his appellate counsel

after the Michigan Court of Appeals had affirmed his conviction.  Petitioner's counsel

attached to the motions an affidavit from Alex J. Cruz, dated March 21, 2004, in which

Cruz stated that Seth Outcalt was afraid of going to prison and was going to "point out

Jose Rodriguez, cause (sic) he was the oldest one at the party,"  Cruz indicated that

Petitioner had nothing to do with the sexual assault, which was consistent with Cruz's

trial testimony.  Petitioner also provided an affidavit from Steven Brink, dated October

15, 2004, which states that Seth, not Petitioner, provided the GHB.  Brink indicates that

he asked Seth if Petitioner had sex with the victim, and Outcalt purportedly told him

that Petitioner did not because he was sleeping on the couch.   Petitioner also provided

an affidavit from Danny Rodriguez, dated October 3, 2004 in which Seth told him that

he put the drugs into the girl's drink.  Seth allegedly told Danny Rodriguez that he was

going to tell everyone to blame Petitioner because he did not want to go to jail.  Danny

Rodriguez indicated that the reason that he did not say anything about this sooner was

"because I did not want to get in any problems."  None of the three affidavits supplied

by Petitioner were notarized.  The Michigan Court of Appeals denied petitioner's motion

for reconsideration.  People v. Rodriguez, No. 249413 (Mich. Ct. App. Oct. 20, 2004).

Petitioner again raised his perjury claim in a supplemental motion for relief from

judgment.  Petitioner attached to his supplemental motion Brink's original affidavit from

October 2004, plus a new affidavit from Brink dated January 29, 2007.  Brinks

essentially made the same allegations that he made in his previous affidavit, except

that he acknowledged that his prior 2004 affidavit was not notarized because he was in

the Ottawa County Jail at the time.

The trial court rejected Petitioner's perjury claim on post-conviction review as

follows:

> Defendant's claim of newly discovered evidence is that one Steven R. Brinks stated in his affidavit that the knows that the "date rape drug" came from Seth Outcalt as Seth Outcalt used the drug in body building and possessed the drug on the day of the incident.  A reading of Seth Outcalt's testimony is not at odds with this possession and use claim.  It is consistent with Seth Outcalt's testimony.
>
> There was no testimony by Seth Outcalt's [sic] at the trial that he did not take a "Grey Goose Vodka bottle" and smash it in a dumpster to conceal fingerprints. And even if there was it would be consistent with his other testimony that he initially lied to the police to protect both himself and the defendant.
>
> Seth Outcalt never testified that he saw defendant having sex with the victim. If he told Steven Brink a few days after the incident that defendant did not have sex with the victim this would be consistent with his testimony that he also lied to police in order to protect defendant.

30

People v. Rodriguez, No. 02-26472-FC, * 3-4  (Ottawa County Cir. Ct., Apr. 20, 2007).

The deliberate deception of a court and jurors by the presentation of known and false evidence is incompatible with the rudimentary demands of justice.  Giglio v. United States, 405 U.S. 150, 153 (1972).  There is also a denial of due process when the prosecutor allows false evidence or testimony to go uncorrected.  Napue v. Illinois, 360 U.S. 264, 269 (1959).  To prevail on a claim that a conviction was obtained by evidence that the government knew or should have known to be false, a defendant must show that the statements were actually false, that the statements were material, and that the prosecutor knew they were false.  A habeas petitioner has the burden of establishing a Giglio violation.

Here, Petitioner is not entitled to habeas relief on his claim.  Outcalt admitted at trial that the GHB was his, that he used it in body building, had given it to other persons before, and had possessed the drug on the day of the incident. (Tr. 3/26/2003, pp. 40, 65-66, 92-93).  There is no evidence that Outcalt testified falsely about not being the source of the GHB.  With respect to the sexual assault, Outcalt never testified that he witnessed Petitioner sexually assault the victim. (Id. at pp. 39-99).  Therefore, Outcalt's statements to the affiants that he did not observe Petitioner have sex with the victim are consistent with his trial testimony.  Outcalt further acknowledged that he initially lied to the police to protect Petitioner and himself. (Id. at p. 60).  Petitioner has failed to show that Outcalt committed perjury.

The record does not support the contention that Outcalt's trial testimony was false or that the prosecution knew it was false.  Accordingly, the state court's rejection

31

of petitioner's claim was not contrary to Supreme Court decisions on the use of perjured testimony.

Finally, to the extent that Petitioner raises a free-standing actual innocence claim, such a claim is not cognizable upon federal habeas review.  <u>See</u> <u>Cress v Palmer</u>, 484 F 3d 844, 854 (6th Cir. 2007).

## L.  <u>Certificate of Appealability</u>

The Court must now determine whether to issue a certificate of appealability at the time of its decision.  <u>See</u> Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254 (eff. December 1, 2009).  In order to obtain a certificate of appealability, Petitioner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2).  To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further.  <u>Slack v. McDaniel</u>, 529 U.S. 473, 483-84 (2000). Where, as here, a district court rejects a habeas petitioner's constitutional claims on the merits, Petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong.  <u>Id</u>. at 484.

For the reasons stated in this memorandum, Petitioner is not entitled to a certificate of appealability because he has failed to make a substantial showing of the denial of a federal constitutional right on any of his claims.  Reasonable jurists would not debate this conclusion.

## IV.  <u>Conclusion</u>

32

For the reasons stated above, the petition is **DENIED.**  A certificate of

appealability is **DENIED.**

**SO ORDERED.**

Dated:  January 8, 2010                    _s/ Avern Cohn_____

AVERN COHN

UNITED STATES DISTRICT JUDGE

I hereby certify that a copy of the foregoing document was mailed to Jose Rodriguez,
452721, Saginaw Correctional Facility, 9625 Pierce Road, Freeland, MI 48623  and the
attorneys of record on this date, January 8, 2010, by electronic and/or ordinary mail.

_s/ Julie Owens_____

Case Manager, (313) 234-5160